UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RUSSELL BRANDS, LLC, | ) | |
| Plaintiff | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No.: 11-30225-KPN |
| | ) | |
| | ) | |
| | ) | |
| GVD INTERNATIONAL TRADING, SA, | ) | |
| Defendant | ) | |

MEMORANDUM AND ORDER WITH REGARD TO DEFENDANT'S
MOTION TO DISMISS (Document No. 10)
March 19, 2012

NEIMAN, USMJ

Presently before the court is a contract dispute between Russell Brands LLC

("Plaintiff") and GVD International Trading S/A ("Defendant").  Defendant, pursuant to

Fed. R. Civ. P. 12(b)(5), has filed a motion to dismiss for insufficient process.  Plaintiff

has opposed the motion, arguing that Defendant was properly served and requesting,

in the alternative, an opportunity to effectuate service at the court's direction pursuant

to Fed. R. Civ. P. 4(f)(3).

The parties have consented to have the undersigned address all matters in this

case pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  For the reasons that

follow, the court will deny Defendant's motion to dismiss and, in turn, grant Plaintiff's

request for alternative service.

I. BACKGROUND

Plaintiff is a limited liability company formerly known as Russell Corporation, a

Delaware corporation.  (Compl. ¶ 1.)  Defendant is a Brazilian corporation with a

principal place of business in Brazil.  (Id. ¶ 2.)  The underlying claim arises from Defendant's alleged breach of a licensing agreement (the "Agreement") between the parties.   (Id. ¶ ¶ 9-18.)  In brief, the terms of the Agreement allow Defendant to use Plaintiff's Spaulding trademark in connection with the manufacture and sale of sportswear in Brazil, Paraguay and Uruguay, in return for specified minimum royalties. (Id. ¶¶ 9, 12.)  Plaintiff alleges that Defendant has not paid any royalties or other fees since 2009 and currently owes Plaintiff something in the neighborhood of $862,000. (Id. ¶ 20.)

More relevant for present purposes, the Agreement includes a clause, labeled "Governing Law," which encompasses both choice of law and forum selection matters. (Exhibit A (Document No. 1-3) at 12.)  First, the clause provides that the Agreement will be "interpreted in accordance with, and governed by, the laws of the Commonwealth of Massachusetts, without regard to its conflict of laws principles."  Second, the clause indicates that the parties "irrevocably consent to the exclusive jurisdiction of the courts of the Commonwealth of Massachusetts to resolve any disputes arising" under the Agreement.  With those provisions in mind, the parties agreed during the motion hearing that, other than the issue of service, this court would properly have jurisdiction over the underlying dispute and that Massachusetts law would govern.

The Agreement also includes a provision entitled "Notice," which explains the means by which the parties were to communicate with each other as "required or permitted" under the Agreement.  The specifics of the Notice clause are addressed below.

In any event, the parties entered into the Agreement in October of 2007.  Plaintiff commenced the present action in October of 2011, sending a summons and complaint via Federal Express International (requiring a signed receipt) to Defendant at the Brazilian address listed in the Agreement.  Shortly thereafter, Defendant's attorney entered a limited appearance and filed the present motion to dismiss, arguing that service by a foreign corporation on a Brazilian corporation must be accomplished through letters rogatory.  Plaintiff having failed to do so, Defendant argues, the court should either dismiss the complaint for insufficient service or, in the alternative, declare the service via Federal Express inadequate and stay the action until proper service is accomplished.

## II. STANDARD OF REVIEW

 "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."  *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987).  "If the plaintiff does not properly effect service on a defendant, then the defendant may move to dismiss the complaint" pursuant to Federal Rule of Civil Procedure 12(b)(5).  *Hilska v. Jones*, 217 F.R.D. 16, 20 (D.D.C. 2003).  "Once challenged, [a] plaintiff [has] the burden of proving proper service."  *Rivera-Lopez v. Dorado*, 979 F.2d 885, 887 (1st Cir. 1992).

## III. DISCUSSION

The manner for properly serving a corporation located outside the United States is set forth in Fed. R. Civ. P. 4(h)(2) and 4(f).  Section 4(h)(2) directs that a corporation "not within any judicial district of the United States" must be served by any means

described in 4(f), other than personal delivery under (f)(2)(C)(i).  Section 4(f), in full,

provides that, "unless federal law provides otherwise," an individual may be served

outside the United States in the following alternative ways:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>>
>> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>>
>> (C) unless prohibited by the foreign country's law, by:
>>> (i) delivering a copy of the summons and of the complaint to the individual personally; or
>>>
>>> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f)(1)-(3).

Here, Plaintiff initially argued that service was proper under 4(f)(2)(C)(ii) but

conceded during oral argument that the documents were not sent by the court's clerk

and, therefore, service by Plaintiff itself was not in accord with subsection (C)(ii).

Accordingly, the court is left to decide whether service was nonetheless proper under

4

the Agreement's Notice provision itself or, as requested by Plaintiff, whether alternative service should be ordered pursuant to Fed. R. Civ. P. 4(f)(3).

A.  Service of Process under the Agreement

In response to Defendant's motion to dismiss, Plaintiff first argues that service was properly effectuated pursuant to the Notice provision of the Agreement itself.  As mentioned, that provision sets forth the means by which the parties were to communicate with each other as "required or permitted" under the Agreement.  By way of example, the provision lists certain events that may require notice, *i.e.*, "[a]ll marketing plans, requests for product, packaging, advertising and other approvals required hereunder," and specifies that communication with regard to those events be "in writing and mailed, e-mailed or faxed to the following address or to such other address or contact as may be designated by [Plaintiff] in writing from time to time." The Notice provision goes on to state that "[a]ll other notices or communications required or permitted to be given under this Agreement will be in writing and will be sent by registered or certified mail, return receipt requested, or nationally recognized overnight courier service (e.g., Federal Express), addressed to the Party to whom such notice is required to be given.  All such notices will be deemed to have been given upon receipt."

Relying on this latter clause, Plaintiff asserts that service of its complaint on Defendant, via Federal Express and a return receipt, was proper.  Moreover, Plaintiff maintains, there is no dispute that Defendant received actual notice.  In response, Defendant argues that the Notice provision does not contemplate service of court

complaints but, instead, was only intended to govern notice of business events arising out of the contract itself.  The court finds Defendant to have somewhat the better argument.

By its very terms, the Notice provision does not appear to have been intended to govern legal notice in the form of service of a complaint.  Rather, in the main, the provision appears to address the operation of the contract itself, most notably "marketing plans, requests for product, packaging, advertising and other approvals." To be sure, Plaintiff makes a compelling argument that the second half of the Notice provision - - which addresses "all other notices or communications required or permitted" under the Agreement - - is a catchall phrase that includes legal notice.  And for additional support, Plaintiff points to the Governing Law provision of the Agreement, which makes clear not only that the contract is to be governed by Massachusetts law (with no reference to Brazilian law) but that the proper venue for any legal dispute is Massachusetts.  To make it jump through the hoops of service which Defendant now interposes, Plaintiff asserts, makes a mockery of the clear import of these various provisions operating in tandem.

It is settled law "that parties to a contract may agree in advance to submit to the jurisdiction of a given court, to permit notice to be served by the opposing party, or even to waive notice altogether."  *Nat'l Equipment Rental Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964).  Thus, parties are well within their rights to contractually agree to the means by which notice of a complaint would be served.  Here, however, the parties do not appear to have sufficiently provided in this Agreement for the service of complaints,

Plaintiff's arguments notwithstanding.  Absent clear language in the Agreement specifying that such legal notice is encompassed within its terms, the court cannot conclude that service of the complaint can be accomplished in the manner suggested and utilized by Plaintiff.  Accordingly, the court turns to Plaintiff's request for a court order of alternative service.

B.  Service of Process Pursuant to Fed. R. Civ. P. 4(f)

As explained, Defendant does not dispute actual receipt of the mailed summons and complaint.  Still, Defendant argues that Plaintiff failed to effectuate proper service pursuant to Fed. R. Civ. P. 4(f).  Relying primarily on subparagraphs 4(f)(1) and (2), Defendant argues that the only way to properly serve a corporation in Brazil is by letters rogatory and that an order permitting any other form of service will not be recognized in Brazil.  In support, Defendant first relies on the Inter-American Convention on Letters Rogatory (the "Convention"), to which the United States and Brazil are signatories, which sets forth the means by which such letters shall be issued. *See* Inter-American Convention on Letters Rogatory, January 30, 1975, S. TREATY DOC. No. 27, 98th Cong., 2d Sess. (1984).  Defendant also submits a Declaration of Paulo Gilson Roos, an attorney practicing in Brazil, which states that "Brazilian law requires that service or process by litigants of courts in foreign nations be made pursuant to a letter rogatory or a letter of request transmitted through diplomatic channels."

Although, as Defendant notes, both Brazil and the United States are parties to the Convention, the Fifth Circuit, the only circuit court to address the issue, has held

that letters rogatory are not the exclusive means for serving process in signatory countries. *See Kreimerman v. Casa Veerkamp, S.A.,* 22 F.3d 634, 639 (5th Cir. 1994) (citing *Pizzabiocche v. Vinelli*, 772 F. Supp. 1245, 1249 (M.D. Fla. 1991)).  The court agrees.  That being so, Plaintiff argues, the court is permitted to authorize alternative service pursuant to Rule 4(f)(3) as long as such service satisfies due process and does not violate any international agreement.  In order to satisfy due process, a method of service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Liberty Media Holdings, LLC v. Vinigay.com*, 2011 WL 810250, at *2  (D. Ariz. Mar. 3, 2011) (quoting *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002)).

Alternative service pursuant to Fed. R. Civ. P. 4(f)(3) has been ordered upon Brazilian defendants in situations very much like the case at bar.  A district court in Maine, for example, ordered service in hand upon the defendant's local attorneys and by certified next-day mail on the defendant's attorney abroad.  *See Lyman Morse Boatbuilding Co., Inc. v. Lee*, 2011 WL 52509, at *3 (D. Me. Jan. 6, 2011).  As here, the plaintiff there initially attempted to serve the defendant in Brazil using overnight mail but was informed by the defendant's counsel that service must be done through letters rogatory that could take six to twelve months.  *Id.* at *2.  The court granted the plaintiff's motion for alternative service pursuant to Fed. R. Civ. P. 4(f)(3), finding not only that the Convention did not prohibit such alternative service but, as well, that "any attempt at formal service through the Brazilian judicial system will be, if not fruitless, prolonged

for such an extensive period of time that evidence and testimony may well be affected." *Id.* at *3.

Plaintiff argues that, here too, serving Defendant with letters rogatory would be expensive and time consuming.  Along these lines, Plaintiff cites one case which refers to a warning from the State Department that service by letters rogatory in Brazil "is problematic and requests can take upwards of three years to complete" and that, "since May of 2003, only two of 100 requests for service under the Convention from the United States have been successfully executed in Brazil." *Liberty Media Holdings,* 2011 WL 810250, at *3.  Although the State Department's website no longer posts such a warning, *see* Brazil Judicial Assistance, http://travel.state.gov/law/judicial/judicial_672.html (last accessed March 2012); *see also J.B. Custom, Inc. v. Amadeo Rossi, S.A., et al.,* 2011 U.S. Dist. LEXIS 60687, at * 19 (N.D. Ind. June 6, 2011), it is clear that service of process through diplomatic channels will be less expedient and more costly than through certified or international mail.

An Arizona court also ordered service by little more than email upon Brazilian defendants whose permanent addresses were unknown.  *See Liberty Media Holdings,* 2011 WL 810250, at *2.  The court determined that such service would reasonably satisfy the requirements of due process and that the Convention did not "supplant all alternative means of service."  *Id.* at *4 (quoting *Kreimerman*, 22 F.3d at 640).  The court also noted that Rule 4(f) "does not 'create a hierarchy of preferred methods of service of process' and, 'court directed service under Rule 4(f)(3) is as favored as

service available under Rule 4(f)(1) or 4(f)(2).'" *Id.* at *2 (quoting *Rio Properties, Inc,* 284 F.3d at 1015).

To be sure, Defendant cites several cases in support of its argument that service of process on a Brazilian party should be made through letters rogatory.  In the court's view, however, each of these cases is distinguishable.  For example, one court held that "Brazilian law requires that service of process by foreign nations be made pursuant to a letter rogatory or a letter of request transmitted through diplomatic channels" for reasons of international comity.  *Commodity Futures Trading Com. v. Nahas*, 738 F.2d 487, 494 (D.C. Cir. 1984).  There, however, the court made an important distinction between service of a subpoena, the document at issue, which compels action and "carries with it the full array of American judicial power," and notice of a complaint, as here, which simply delivers information.  *Id.* at 494 n.14.  The court explained that "[w]hen process in the form of a complaint is served . . . the informational nature of the process renders the act of service relatively benign in terms of infringement on the foreign nation's sovereignty."  *Id.*

Defendant also cites *Tucker v. Interarms*, 186 F.R.D. 450 (N.D. Ohio 1999), for the proposition that "Rule 4(f)(2)(A) strongly suggests that [a plaintiff] must obtain service of process upon [a Brazilian defendant] via letters rogatory."  *Id.* at 452.  The court noted that the plaintiff's "use of the 'safe harbor' of letters rogatory makes it far more likely that he will later be able to enforce any judgment abroad."  *Id.*  The court, however, based its decision, at least in part, on *Commodity Futures Trading Com.*, where, as described, a distinction was made between service of notice and service of

10

subpoenas.  More importantly for present purposes, *Tucker*, a negligence action, did not involve a contract, as here, in which both jurisdiction and choice of law were agreed upon.

Defendant next cites *Alpha Omega Technology v. PGM-Comercio e Participacoes Ltda.*, 1994 WL 37787 (S.D.N.Y. Feb. 9, 1994), in which the court concluded that service by certified mail on the defendant was improper because "Brazilian law requires that service of process by a foreign party upon a party domiciled in Brazil must be made by means of letters rogatory." *Id.* at * 1.  Nonetheless, the court denied the objection to service of process, "based upon considerations of fairness," and ordered the parties to proceed to arbitration pursuant to an agreement in which the parties had already agreed to jurisdiction and choice of law.  In so doing, the court noted that, as is true here, "defendants clearly had actual notice." *Id.*

The last case on which Defendant relies also deserves mention given its surface similarity to the situation at bar, *J.B. Custom,* cited above, where two parties to a contract found themselves in a dispute about the proper way to effect service in Brazil. The court determined that sending notice via certified mail did not satisfy any of the options presented in Fed. R. Civ. P. 4(f) and declined to grant the plaintiff's request for alternative court-ordered service under 4(f)(3) for fear of encroaching on Brazil's sovereignty; the court reasoned that if the plaintiff thought that letters rogatory would be a "fruitless endeavor," there was "nothing preventing it from hiring Brazilian counsel and suing [the defendant] in Brazil." *J.B. Custom*, 2011 U.S. Dist. LEXIS 60687, at *19-20. The court also noted that the plaintiff could have "avoided this entire issue of what

11

would constitute sufficient service by simply insisting on a clause in its contract with [the defendant] as to what would happen in the event of litigation." *Id.* Here, in contrast, the parties successfully set forth contractual terms in their Agreement outlining both jurisdiction and choice of law should there be litigation; these terms preclude the parties from the alternative suggested by the court in *J.B. Custom*, as litigation arising out of the Agreement must take place in Massachusetts, not Brazil.

In the end, given the totality of the circumstances, the court is persuaded that alternative service is appropriate under Fed. R. Civ. P. 4(f)(3).  Accordingly, the court accepts Plaintiff's proposed means of service by personal in-hand service on Defendant's Massachusetts attorney, service by email upon Defendant's Virginia attorney, and service via Federal Express at Defendant's Brazilian address.[1]

## IV. CONCLUSION

For the reasons stated, Defendant's motion to dismiss for insufficient process is DENIED.  Plaintiff's request for alternative service pursuant to Fed. R. Civ. P. 4(f)(3) is ALLOWED and Plaintiff shall serve Defendant and Defendant's counsel in the manner described above.

---

[1] The court notes that, in reaching its decision that letters rogatory are not the exclusive means of serving process in countries which are signatories to the Convention, the Fifth Circuit in *Kreimerman* warned that plaintiffs who opted not to utilize letters rogatory "assume the risk that other legal principles, like the principle of international comity, might hinder their establishment of jurisdiction over the defendants" and, as relevant here, may "discover that their failure to employ the Convention's safe harbor procedures makes enforcement of their judgments abroad more difficult or even impossible." 22 F.3d at 644.  Here, Plaintiff, through counsel, indicated at oral argument that it was well aware of the risk.

12

IT IS SO ORDERED.

DATED: March 19, 2012


   /s/ Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge